DECISION
In this original action, relator, Harry McEndree, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and order the commission to issue an order granting his application, or ordering the commission to explain why Dr. Kepple's November 2000 opinion was excluded as irrelevant.
Pursuant to Civ.R. 53(C) and Loc.R. 12, Section (M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended that the requested writ of mandamus be denied. Relator has filed objections to the magistrate's decision. Relator's objections to the contrary, this court agrees with the magistrate's analysis of the pertinent issues. Accordingly, relator's objections will be overruled.
Relator sustained an industrial injury on May 18, 1979. While relator had other claims, such claims had been considered "statutorily dead" because of the passage of time since the last payment of compensation.
Relator filed an application for PTD compensation in October 2000, and submitted a report of Dr. Richard Glass in support of his application. Relator was examined by Dr. Richard Kepple, who issued a report on August 7, 2000, generally confining his findings and opinions to the allowed condition of the May 18, 1979 injury only. Dr. Kepple concluded his report with the opinion that, while relator had reached maximum medical improvement, he was capable of sedentary work. Relator was then examined by Dr. James Rutherford, who issued a report on January 2, 2001, concluding that, from the allowed conditions in the 1979 claim, relator could not return to his former position of employment and was restricted to sedentary activities. Dr. Rutherford also completed an occupational activity assessment which, in its general conclusions, was consistent with his findings upon examination of relator. Dr. Kepple issued a second report dated November 8, 2000. Dr. Kepple, in this second report, generally concluded that relator was permanently and totally disabled; however, the report referenced conditions that were allowed in claims that were no longer active claims before the commission.
The second occupational activity assessment was prepared by Beal Lowe, Ph.D., and dated February 15, 2001. Dr. Lowe found that relator was permanently and totally disabled; however, the report was somewhat ambiguous since there was a conclusion that relator was permanently and totally disabled, but could apparently perform sedentary employment. Relator was 67 at the time of the assessment.
The commission ultimately denied relator's request for PTD compensation, primarily relying upon the reports of Dr. Rutherford and the earlier report, on August 7, 2000, of Dr. Kepple. The staff hearing officer particularly rejected the later report of Dr. Kepple, stating as follows:
 Dr. Kepple examined the claimant again in November of 2000. Dr. Kepple's second examination of the claimant evaluated the medical conditions relative to all of the claimant's four industrial injuries despite the fact that three of these industrial claims were statutorily inactive. When a medical expert purports to render a disability opinion based in part on non-medical factors, that opinion is disqualified from evidentiary consideration. State ex rel. Shields v. Indus. Comm., (1996), 74 Ohio St.3d 264; State ex rel. Catholic Diocese of Cleveland v. Indus. Comm., (1994), 69 Ohio St.3d 560. Therefore, Dr. Kepple's 11/8/00 report is rejected.
As correctly pointed out by the magistrate, the relevant inquiry relating to consideration of permanent total disability is claimant's ability to perform any sustained remunerative employment. As accurately alluded to in the magistrate's decision, the commission rejected Dr. Kepple's later report since his opinion was based in part on nonallowed conditions.
The magistrate correctly concluded that, even if Dr. Kepple's report is removed from consideration of the issue of PTD compensation, the report of Dr. Rutherford, in itself, is sufficient to support the ultimate conclusion of the commission denying PTD compensation. Thus, it is clear that Dr. Rutherford's report, combined with the occupational activity assessment, is some evidence upon which the commission could base its determination denying PTD compensation. Therefore, we agree with the major conclusion of the magistrate that the removal of Dr. Kepple's subsequent report with respect to PTD compensation does not result in an abuse of discretion as there was ample evidence, as exhibited by Dr. Rutherford's report, and the occupational activity assessment upon which the commission could base its decision denying compensation.
Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law thereto. As previously indicated, relator's objections to the decision of the magistrate are overruled. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the decision of the magistrate, relator's requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
TYACK, P.J., and BRYANT, J., concur.
 APPENDIX A IN MANDAMUS
Relator, Harry McEndree, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation, and to order the commission to issue an order either granting relator's application for PTD compensation or ordering the commission to explain why Dr. Kepple's November 2000 opinion was excluded as irrelevant.
Findings of Fact:
1. Relator sustained a work-related injury on May 18, 1979, and his claim has been allowed for:
 * * * Sprain neck, back and shoulders. Cervical spondylolis-thesis and neck strain. Herniated disc C6-7. Aggravation of degenerative disc disease of the cervical spine. Degenerative osteoarthritis of the lower back.
Three other claims were referenced; however, they were statutorily dead because of the passage of ten years since the last payment of compensation. Those claims involve the following additional conditions: "left little finger," "pain in head, neck, and back," and "right groin strain, lumbosacral sprain, right inguinal hernia."
2. On October 10, 2000, relator filed an application for PTD compensation. Relator submitted the September 19, 2000 report of Richard S. Glass, M.D., who opined that relator had reached maximum medical improvement ("MMI") and is permanently disabled as a result of the allowed conditions. Dr. Glass indicated that relator would be unable to do even sedentary work on a regular basis because of the difficulties he has with his leg giving out on him which impairs his ability to get around to do much in the way of work.
3. Relator was examined by Richard N. Kepple, M.D., who issued a report dated August 7, 2000. In that report, Dr. Kepple confined his findings and opinion to the allowed conditions arising out of the May 18, 1979 claim only. After noting his objective findings, Dr. Kepple concluded as follows:
 According to the enclosed records, the allowed conditions of this claim are "sprain of neck, back and shoulders; herniated disc C6-7; aggravation of degenerative disc disease of cervical spine; degenerative osteoarthritis of the low back."
 Based on my examination today, Mr. McEndree is unable to return to his former position as a mine car repairman and laborer for Quarto Mining, Inc. He is capable of sedentary work which is upper extremity-oriented and in which he can stand and/or walk every 30 to 45 minutes for comfort.
 In my opinion Mr. McEndree has reached maximum medical improvement for all of the allowed conditions of this claim. Additional therapy/treatment will not result in any improve-ment in his condition.
 Mr. McEndree's primary problem at the time of my examination was symptomatic degenerative disc disease/-arthritis of his neck and lower back and degenerative joint disease in his shoulders. As degenerative disc disease and degenerative arthritis have been allowed in this claim, treatment with anti-inflammatory and non-narcotic pain medication under this claim is appropriate. No other type of treatment is indicated or necessary.
4. Relator was also examined by James Rutherford, M.D., who issued a report dated January 2, 2001. Dr. Rutherford examined relator solely for the allowed conditions in the 1979 claim. Dr. Rutherford noted his objective findings, concluded that relator had reached MMI, assessed a twenty-three percent whole person impairment as a result of the allowed conditions in the 1979 claim only, opined that relator could not return to his former position of employment at either Quarto Mining or as a maintenance worker, and concluded that relator was restricted to sedentary activities with only occasional standing and walking with the use of a cane. Dr. Rutherford completed an occupational activity assessment wherein he indicated that relator could sit for five to eight hours, stand and walk with a cane for zero to three hours; lift, carry, push, pull or otherwise move up to ten pounds for zero to three hours; occasionally climb stairs, use foot controls, stoop, bend, kneel, reach at knee and floor level; frequently reach at waist level; was unrestricted in his ability to handle objects; and was precluded from climbing ladders and reaching overhead.
5. Dr. Kepple issued a second report dated November 8, 2000. In that report, Dr. Kepple listed the conditions which were originally allowed in a 1973 and a 1976 claim which were statutorily dead for purposes of relator's application. In making his objective findings, this magistrate notes that Dr. Kepple indicated that relator had significantly less range of motion of both his cervical and lumbar spine; however, there is no reason given in that report for the difference. Based upon his November 8, 2000 report, Dr. Kepple opined that relator was permanently and totally disabled.
6. An employability assessment report was prepared by Michael A. Klein, Ph.D., and dated February 12, 2001. Based upon Dr. Glass's report, Dr. Klein noted that there were no employment options available for relator. However, based upon Dr. Kepple's August 7, 2000 report, as well as Dr. Rutherford's report, Dr. Klein indicated that relator could immediately perform the following jobs: "Cashier, sorter, hand packer or counter clerk." Following appropriate academic remediation and/or brief skill training, Dr. Klein indicated that relator could perform the following additional jobs: "Surveillance system monitor, telephone sales; telephone quotation clerk; customer service representative." Dr. Kepple noted that relator's age of sixty-seven should not be, in and of itself, a preclusive factor in returning to work, noted that his education would be sufficient to return to work or to remediate to entry level work, and that his long work history shows good work adjustment and job maintenance behavior.
7. An employability assessment was prepared by Beal D. Lowe, Ph.D., and dated February 15, 2001. Dr. Lowe found that relator was permanently and totally disabled and noted as follows:
 This assessment finds Mr. McEndree to be permanently and totally disabled as a result of his physical functional restriction, at best, to Sedentary employment.
 As a 67 year-old individual whose work experience has required only minimal academic skills and virtually no clerical detail skills, and who has not been involved in any academic pursuit since 1949, Mr. McEndree is found to lack capacity to meet academic demands of any Sedentary retail or clerical occupation. At age 67, Mr. McEndree is found to lack capacity to be re-educated or retrained to perform any such occupa-tion.
8. Relator's application was heard before a staff hearing officer ("SHO") on April 17, 2001, and resulted in a order denying him TTD compensation. The SHO specifically relied upon the January 2, 2001 report of Dr. Rutherford and the August 7, 2000 report of Dr. Kepple. The SHO rejected the November 2000 report of Dr. Kepple as follows:
 Dr. Kepple examined the claimant again in November of 2000. Dr. Kepple's second examination of the claimant evaluated the medical conditions relative to all of the claimant's four industrial injuries despite the fact that three of these industrial claims were statutorily inactive. When a medical expert purports to render a disability opinion based in part on non-medical factors, that opinion is disqualified from evidentiary consideration. State ex rel. Shields v. Indus. Comm., (1996), 74 Ohio St.3d 264; State ex rel. Catholic Diocese of Cleveland v. Indus. Comm., (1994), 69 Ohio St.3d 560. Therefore, Dr. Kepple's 11/8/00 report is rejected.
The SHO agreed with the vocational findings of Dr. Klein and concluded that relator was not permanently and totally disabled (the commission's analysis of the nonmedical factors can be found at pages 13 through 15 of the record for this court's review).
9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Relator's argument focuses on the commission's rejection of Dr. Kepple's November 2000 report. Relator contends that, although Dr. Kepple did list the conditions in the other claims, which were not relevant to his PTD application, Dr. Kepple confined his ultimate opinion with regard to disability to the 1979 injury. Relator contends further that, if this court finds that Dr. Kepple's November 2000 report should be excluded from consideration, then the commission abused its discretion by relying on Dr. Kepple's earlier August 2000 report.
The commission rejected Dr. Kepple's November 2000 report because the commission concluded that Dr. Kepple had based his opinion, in part, on nonallowed conditions. While Dr. Kepple does appear to confine his opinion to the 1979 claim only, Dr. Kepple does not explain why he concluded that relator was permanently and totally disabled in November 2000 when Dr. Kepple found him capable of sedentary work in August 2000. As stated previously in the findings of fact, this magistrate noted that the objective findings noted by Dr. Kepple differed significantly between the August 2000 and November 2000 reports. Further, nothing in the November 2000 report accounts for that difference. However, even if relator is correct that, in his November 2000 report, Dr. Kepple repudiated his August 2000 opinion, the removal of the August 2000 report from the record would not warrant the issuance of a writ of mandamus.
In its order denying his application for PTD compensation, the commission specifically relied upon the report of Dr. Rutherford as well as the August 2000 report of Dr. Kepple. If Dr. Kepple's August 2000 report is removed from consideration, the report of Dr. Rutherford constitutes some evidence upon which the commission relied in finding that he was not entitled to PTD compensation. Relator does not challenge Dr. Rutherford's report.
In State ex rel. Ehlinger v. Indus. Comm. (1996), 76 Ohio St.3d 400, the Ohio Supreme Court noted that the commission had relied upon the reports of Drs. Hutchison and Gnage. The claimant had asserted that there were deficiencies in Dr. Hutchison's report which should have excluded it from consideration. The court found that, because the commission relied upon the reports of both Drs. Hutchison and Gnage, any alleged deficiencies in Dr. Hutchison's report were immaterial because Dr. Gnage's report constituted "some evidence" supporting the commission's conclusions.
In the present case, the commission relied upon the reports of Drs. Rutherford and Kepple. Because Dr. Rutherford's report constitutes "some evidence" upon which the commission could rely in denying relator's application for PTD compensation, any deficiencies in the report of Dr. Kepple are immaterial.
Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation. Even if Dr. Kepple's August 2000 report is removed from consideration, the report of Dr. Rutherford constitutes some evidence upon which the commission relied in finding that relator was capable of performing some sedentary work activities and relator's request for a writ of mandamus should be denied.